[Cite as *State v. Williams*, 2021-Ohio-256.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 1-19-70

    v.

ALONZO L. WILLIAMS, JR.,            O P I N I O N

    DEFENDANT-APPELLANT.

---

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CR 2019 0004**

**Judgment Affirmed**

**Date of Decision: February 1, 2021**

---

APPEARANCES:

    *F. Stephen Chamberlain* **for Appellant**

    *Jana E. Emerick* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Alonzo L. Williams, Jr. ("Williams"), appeals his conviction and sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This matter stems from a series of drug-related charges involving Williams that took place in Allen County, Ohio at three separate locations and on three separate dates: October 4, 2018, October 29, 2018, and December 28, 2018.

{¶3} On February 14, 2019, the Allen County Grand Jury indicted Williams on ten criminal charges including: Count One, failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B), (C)(5)(a)(ii), a third-degree felony; Count Two, possession of heroin in violation of R.C. 2925.11(A), (C)(6)(d), a second-degree felony; Count Three, aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(b), a third-degree felony; Counts Four and Five, aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(a), each fifth-degree felonies; Count Six, trafficking in heroin in violation of R.C. 2925.03(A)(1), (C)(6)(c), a fourth-degree felony; Count Seven, aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1), (C)(1)(a), a fourth-degree felony; Count Eight, tampering with evidence in violation of R.C. 2921.12(A)(1), (B), a third-degree felony; Count Nine, having weapons while under disability in violation of R.C. 2923.13(A)(3), (B), a third-degree felony; and Count Ten, carrying

a concealed weapon in violation of R.C. 2923.12(A)(2), (F)(1), a fourth-degree felony.[1] (Doc. No. 5). The indictment included forfeiture specifications as to Counts Two, Three, Four, and Five. (*Id.*). On February 20, 2019, Williams appeared for arraignment and entered pleas of not guilty. (Doc. No. 11).

{¶4} On October 4, 2019, the State filed its notice of intent to use "other-acts" evidence at trial under Evid.R. 404(B) and R.C. 2945.59. (Doc. No. 98). On October 10, 2019, Williams filed his memorandum in opposition to the State's notice. (Doc. No. 112). The trial court addressed the State's "other acts" motion and the defense's objection at a pretrial hearing and granted the State's request. (Oct. 15, 2019 Tr., Vol. I, at 4-20).

{¶5} Williams's case proceeded to a jury trial on October 15, 16 and 17, 2019 wherein he was found guilty of all counts and specifications. (Doc. Nos. 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 133); (Oct. 17, 2019 Tr., Vol. III, at 825-836, 847-848).

{¶6} On October 17, 2019, the trial court sentenced Williams to an aggregate of 17 years in prison.[2] (Doc. No. 134); (Oct. 17, 2019 Tr., Vol. III, at 853-857).

---

[1] Counts One, Two, Three, Four, and Five occurred on or about October 4, 2018; Counts Six and Seven occurred on or about October 29, 2018; and Counts Eight, Nine, and Ten occurred on or about December 28, 2018. (Doc. No. 5).

[2] The trial court ordered a mandatory-minimum-drug fine in the amount of $7,500 with a specific distribution as to Count Two and forfeited $5,288 as to Counts Two, Three, Four, and Five. (Doc. No. 134); (Oct. 17, 2019 Tr., Vol. III, at 854-855). Williams was given 179 days' jail-time credit. (*Id.*); (*Id.* at 859). After sentencing, and on October 18, 2019, Williams's trial counsel filed an affidavit of indigency and financial disclosure form. (*Id.*); (*Id.*)

The judgment entries of conviction and sentencing were journalized on October 21, 2019. (Doc. Nos. 133, 134). Williams filed his notice of appeal on November 7, 2019, and Williams raises the following four assignments of error for our review. (Doc. No. 139).

**Assignment of Error No. I**

**The Trial Court Committed Error Prejudicial To The Defendant By Improperly Excluding Two African-American Jurors For Cause Over The Objections Of The Defendant.**

**Assignment of Error No. II**

**The Trial Court Committed Error Prejudicial To The Defendant By Overruling The Defendant's Motion To Exclude Other Acts Evidence Under Evid.R. 403 And 404.**

**Assignment of Error No. III**

**The Trial Court Committed Error Prejudicial To The Defendant By Allowing And [sic] Out Of Court Identification Of The Defendant It Was Based Upon A Tainted An [sic] Illegal Photo Lineup.**

**Assignment of Error No. IV**

**The Trial Counsel For The Defendant Was Ineffective And Therefore Violated The Defendant's Right To Effective Assistance Of Counsel Pursuant To The Sixth And Fourteenth Amendments Of The United States Constitution And Article One Section Ten Of The Ohio Constitution.**

{¶7} For ease of our discussion, we will discuss Williams's assignments of error out of order.

**Assignment of Error No. II**

**The Trial Court Committed Error Prejudicial To The Defendant By Overruling The Defendant's Motion To Exclude Other Acts Evidence Under Evid.R. 403 And 404.**

{¶8} In his second assignment of error, Williams asserts that the trial court permitted "other acts" into evidence, which constituted impermissible propensity evidence under Evid.R. 404, that was irrelevant and unfairly prejudicial under Evid.R. 401, 402, and 403.

*Standard of Review*

{¶9} "Generally, '[a] trial court is given broad discretion in admitting and excluding evidence, including "other bad acts" evidence.'" *State v. Wendel*, 3d Dist. Union No. 14-16-08, 2016-Ohio-7915, ¶ 23, quoting *State v. Williams*, 7th Dist. Jefferson No. 11 JE 7, 2013-Ohio-2314, ¶ 7, citing *State v. Maurer*, 15 Ohio St.3d 239, 265 (1984). However, "[t]he admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law." *State v. Hartman*, ___ Ohio St.3d ___, 2020-Ohio-4440, ¶ 22.

{¶10} Thus, this court reviews *de novo* whether a trial court admitted improper character evidence and applies an abuse-of-discretion standard to evidentiary decisions regarding the admission of other-acts evidence for permissible purposes. *See id.*, citing Leonard, *The New Wigmore: Evidence of Other Misconduct and Similar Events*, Section 4.10 (2d Ed.2019) (because "[d]etermining

whether the evidence is offered for an impermissible purpose does not involve the exercise of discretion * * *, an appellate court should scrutinize the [trial court's] finding under a de novo standard" of review) and *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 17 (the trial court is precluded by Evid.R. 404(B) from admitting improper character evidence, but it has discretion whether to allow other-acts evidence that is admissible for a permissible purpose). *See also State v. Glenn-Coulverson*, 10th Dist. Franklin No. 16AP-265, 2017-Ohio-2671, ¶ 24 ("Thus, a reviewing court will not reverse a trial court's evidentiary ruling absent an abuse of discretion that materially prejudices the affected party."), citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001).

{¶11} "De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio*, 64 Ohio St.3d 145, 147 (1992). An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

*Analysis*

{¶12} Initially, we must determine whether Williams preserved this issue on appeal. Williams's arguments revolve around the testimonies of Detective Matt Boss's ("Det. Boss"), Deputy Justin Kirk's ("Dep. Kirk") and Patrolman Kaitlyn Weiderman's ("Ptlm. Weiderman") regarding Williams's three previous traffic

stops. (*See* Oct. 15, 2019 Tr., Vol. I, 7-20, 299-321). The record reveals that Williams objected to the admission of his two prior traffic stops involving Dep. Kirk and Ptlm. Weiderman by pretrial motion and prior to the commencement of *voir dire*. (Doc. Nos. 98, 148); (Oct. 15, 2019 Tr., Vol. I, 7-20, 299-321). Further, the record reveals that Williams objected to the statements made in open court of Det. Boss and Dep. Kirk contemporaneously with their testimonies. (Oct. 15, 2019 Tr., Vol. I, 299-321). Accordingly, Williams has preserved this issue for our review, on appeal.

{¶13} "'Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."'" *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 56, quoting *State v. May*, 3d Dist. Logan No. 8-11-19, 2012-Ohio-5128, ¶ 69, quoting Evid.R. 404(B). *See also Wendel* at ¶ 21. "'However, there are exceptions to the general rule: "[i]t may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."'" *Bagley* at ¶ 56, quoting *May* at ¶ 69, quoting Evid.R. 404(B). *See also* R.C. 2945.59. "'The list of acceptable reasons for admitting testimony of prior bad acts into evidence is non-exhaustive.'" *Bagley* at ¶ 56, quoting *State v. Persohn*, 7th Dist. Columbiana No. 11 CO 37, 2012-Ohio-6091, ¶ 23, citing *State v. Melton*, 11th Dist. Lake No. 2009-L-078, 2010-Ohio-

1278, ¶ 78, and citing *State v. Faye*, 3d Dist. Wyandot Nos. 16-99-08 and 16-99-09, 2000 WL 566741, *4 (May 4, 2000). Here, the other-acts evidence was principally offered by the State to prove Williams's identity. (Oct. 15, 2019 Tr., Vol. I, at 11).

{¶14} "Other acts can be evidence of identity in two types of situations. First are those situations where other acts 'form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment,' and which are 'inextricably related to the alleged criminal act.'" *State v. Lowe*, 69 Ohio St. 527, 531 (1994), quoting *State v. Curry*, 43 Ohio St.2d 66, 73 (1975).

{¶15} "Other acts may also prove identity by establishing a modus operandi applicable to the crime with which a defendant is charged." *Id.* "'Modus operandi' literally means method of working." *Hartman* at ¶ 37, citing *People v. Barbour*, 106 Ill.App.3d 993, 999, 62 Ill.Dec. 641, 436 N.E.2d 667 (1982). "'"Other acts" may be introduced to establish the identity of a perpetrator by showing that he has committed similar crimes and that a distinct, identifiable scheme, plan, or system was used in the commission of the charged offense.'" *Lowe* at 531, quoting *State v. Smith*, 49 Ohio St.3d 137, 141 (1990). "Evidence of modus operandi is relevant to prove identity: 'Evidence that the defendant had committed uncharged crimes with the same peculiar modus tends to identify the defendant as the perpetrator of the charged crime.'" *Hartman* at ¶ 37, quoting 1 Imwinkelried, Giannelli, Gilligan, Lederer & Richter, *Courtroom Criminal Evidence*, Section 907 (6th Ed.2016). *See*

*also Lowe* at 531 ("A certain modus operandi, is admissible not because it labels a defendant as a criminal, but because it provides a behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator."). "To be admissible to prove identity through a certain *modus operandi*, other-acts evidence must be related to and share common features with the crime in question." (Emphasis sic.) *Lowe* at 531. *See also Hartman* at ¶ 37.

{¶16} The Supreme Court of Ohio has set forth a three-step analysis for trial courts to conduct in determining whether "other acts" evidence is admissible under Evid.R. 404(B). *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 19-20. "The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Id.* at ¶ 20, citing Evid.R. 401. *See also Hartman* at ¶ 24, 28. "The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)." *Williams* at ¶ 20. *See also Hartman* at ¶ 26. "The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the

danger of unfair prejudice." *Williams* at ¶ 20, citing Evid.R. 403. *See also Hartman* at ¶ 29.

{¶17} Here, to properly address Williams's "other acts" argument, we must undertake a review as to the State's use of such evidence at trial. First, as to the facts of Williams's current case, the State called Deputy Scott Danmeyer ("Dep. Danmeyer") as its first witness in its case-in-chief. (Oct. 15, 2019 Tr., Vol. I, at 209). Dep. Danmeyer testified that he was attempting to initiate a traffic stop of a motor vehicle registered to Betty Jo Cotton ("Cotton")) whom Dep. Danmeyer believed was under a driver's-license suspension at the time. (*Id.* at 210-215). He further testified he could not see the driver because the vehicle's windows tint was too dark. (*Id.* at 210-214). According to Dep. Danmeyer, after he stopped the vehicle and as he approached the rear of the vehicle, the vehicle sped off. (*Id.* at 215). A chase ensued culminating in Dep. Danmeyer witnessing the suspect's vehicle pull into a private driveway in a residential area. (*Id.* at 215-223). Dep. Danmeyer testified that he witnessed the suspect exit the vehicle, turn and face him briefly, then turn and run around the side of the residence and through the back yard. (*Id.* at 224, 225). Dep. Danmeyer testified that he gave chase, but the suspect eluded him. (*Id.* at 224).

{¶18} Next, the State called its first witness as to "other acts" evidence, Det. Boss. (*Id.* at 299). Det. Boss testified that he was involved in a traffic stop of a

vehicle (owned by Cotton) and being driven by Williams in Lima on August 16, 2016. (*Id.* at 300).

{¶19} Then, the State called Dep. Kirk regarding his traffic stop involving Williams in Lima on May 10, 2016 as its second witness of "other acts" evidence. (*Id.* at 304). Dep. Kirk testified that he was running traffic on North Cole Street in Lima, Allen County, Ohio when he clocked Williams on radar driving in excess of the posted speed limit. (*Id.* at 305). After Dep. Kirk activated his overhead lights, Williams sped away eventually pulling into a driveway of a private residence and then exit the vehicle. (*Id.* at 305-307). According to Dep. Kirk, as Williams rounded the front of the driver's side of the vehicle, he witnessed Williams throw something into the front yard. (*Id.* at 307-308). After detaining and identifying Williams, Dep. Kirk retrieved the object discarded by Williams, which was later determined to be heroin. (*Id.* 308-310). Dep. Kirk testified that Williams entered a guilty plea to a possession of heroin charge stemming from this incident. (*Id.* at 310).

{¶20} Lastly, the State called Ptlm. Weiderman as its third witness of the "other acts" evidence of Williams. (*Id.* at 311). Ptlm. Weiderman, Lima Police officer, testified that she observed Williams (with whom she was familiar and knew to be currently under a license suspension and having no valid operator's license) operating a motor vehicle. (*Id.* at 312-313). Ptlm. Weiderman activated her lights to initiate a traffic stop. (*Id.*). Williams then pulled into a private driveway and

quickly exited the vehicle. (*Id.* at 313-314). While out of Ptlm. Weiderman's sight, Williams ran to the back of the house, and after a few seconds, returned to the front of the motor vehicle. (*Id.* at 314). After Williams was detained in the back of Ptlm. Weiderman's cruiser, she searched the area behind the house (where Williams ran) and located a bag containing an unknown substance on the roof of the residence. (*Id.* at 315-316). Thereafter, the substance was determined to be heroin, and William was ultimately convicted of possession of heroin. (*Id.* at 316). In the case before us, the State offered these traffic stops of Williams for the legitimate purpose of proving the identity of Williams as to the suspect who fled from Dep. Danmeyer.

{¶21} In applying the first step of the *Williams* analysis, we look to the "other acts" evidence elicited by the State through the testimonies of Det. Boss, Dep. Kirk, and Ptlm. Weiderman. *See Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, at ¶ 20. This evidence of William's history of driving Cotton's vehicle, his vehicle, and flight from law enforcement stopping abruptly in a private driveway, and fleeing the officer on foot where discarded illegal drugs are discovered along his fleeing path, has a "tendency to make the existence of any fact that is of consequence" (that Williams was identified as the driver of Cotton's vehicle by Dep. Danmeyer and person who fled him along the path where illegal drugs were discovered) "more probable * * * than it would be without that evidence." Evid.R. 401. Because this evidence is relevant to the question of Williams's identity, and "[a]ll relevant

evidence is admissible * * *" under Evid.R. 402, we conclude that this evidence was both relevant and admissible under the first step of the *Williams* analysis. *See Williams* at ¶ 20.

{¶22} As to the second step of our analysis, we conclude that that the evidence was of Williams's prior traffic stops was admitted for a permissible nonpropensity purpose namely, identity, which is material under the facts before us and not offered as evidence of other crimes, wrongs, or acts. (*See* Oct. 15, 2019 Tr., Vol. I, at 11). *See Williams* at ¶ 20; *Hartman* at ¶ 26-27; Evid.R. 404(B). Thus, the second prong of the *Williams* analysis is satisfied.

{¶23} We now address the third and final step of the *Williams* analysis, which is whether exclusion of the "other acts" evidence (i.e., the three prior traffic stops) is mandated under Evid.R. 403(A). *See Williams* at ¶ 20, citing Evid.R. 403; *Hartman* at ¶ 29. Williams argues that since *other evidence* exists in the record (i.e., the photo array shown to Dep. Danmeyer and evidence located during Dep. Danmeyer's search of Cotton's vehicle) supporting Williams to be the driver of Cotton's vehicle, the State's "other acts" evidence is cumulative and prejudicial. (Oct. 15, 2019 Tr., Vol. I, at 13-14, 16-17, 237, 288); (*See* State's Exs. 10, 12, 13). However, we agree with the trial court's ruling and conclude this argument to be unpersuasive under the facts presented.[3] (*Id.*); (*Id.*).

---

[3] Importantly, Williams never stipulated that he was person who fled on foot from Dep. Danmeyer, making the identity of the person involved in the traffic stop of October 4, 2018 material (and genuinely disputed)

{¶24} Moreover, even if we were to have concluded otherwise, the trial court provided the jury with a *well-tailored* limiting instruction as to the purpose of the "other acts" evidence and mitigated the risk of unfair prejudice.[4] *See Hartman* at ¶ 70.

{¶25} Because we concluded that the other-acts evidence introduced in this case was relevant and admissible for a permissible nonpropensity purpose, which was a material issue before the trial court and that exclusion of this evidence was not mandated under Evid.R. 403(A), we cannot say that the trial court abused its discretion by admitting the "other acts" evidence under Evid.R. 404(B).

{¶26} Accordingly, Williams's second assignment of error is overruled.

## Assignment of Error No. III

**The Trial Court Committed Error Prejudicial To The Defendant By Allowing And [sic] Out Of Court Identification Of The Defendant It [sic] Was Based Upon A Tainted An [sic] Illegal Photo Lineup.**

{¶27} In his third assignment of error, Williams argues that the trial court erred in admitting evidence of his out-of-court identification (i.e., a photo lineup) at trial. Specifically, Williams argues that the out-of-court identification (of Williams

---

under Counts One, Two, Three, Four, and Five. Consequently, we cannot conclude that exclusion of this evidence was required under Evid.R. 403(A).

[4] The limiting instruction in the instant case was specifically tailored to the underlying facts of Williams's case. (*See* Oct. 17, 2019 Tr., Vol. III, at 772).

as the driver of the vehicle) by Dep. Danmeyer was derived from impermissibly suggestive pretrial-identification procedures, and thus should have been excluded.

*Standard of Review*

{¶28} "[T]he admission of evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62, citing *Issa*, 93 Ohio St.3d at 64. "[O]ur inquiry is confined to determining whether the trial court acted unreasonably, arbitrarily, or unconscionably in deciding the evidentiary issues about which" Williams complains. *Id.*, citing *State v. Barnes*, 94 Ohio St.3d 21, 23 (2002). Here, William's argues that the evidence that was admitted as to Williams's out-of-court identification was non-compliant with R.C. 2933.83 and hence, unreliable.

*Analysis*

{¶29} R.C. 2933.83(B) requires any law-enforcement agency that conducts live lineups and photo lineups to adopt minimum procedures for conducting the lineups.[5] "Unless impracticable, a blind or blinded administrator shall conduct the live lineup or photo lineup." R.C. 2933.83(B)(1). One manner in which to ensure an administrator is "blind" or "blinded" is to conduct the photo lineup using a

---

[5] R.C. 2933.83(A) contemplates that the "[e]yewitness" and "investigating officer" are two separate individuals. Importantly, under the facts presented, Dep. Danmeyer is both the "[e]yewitness" and the initial "investigating officer" at the crime scene.

"folder system," wherein a suspect's photograph, five "filler" photographs, and four blank photographs are individually placed in separate folders, marked 1 through 10, and shown in random order to the witness. *See* R.C. 2933.83(A)(6) and (B)(1). "When evidence of a failure to comply with any of the provisions of this section * * * is presented at trial, *the jury shall be instructed* that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification resulting from or related to the lineup." (Emphasis added.) R.C. 2933.83(C)(3).

{¶30} We note that Williams's trial counsel did not file a motion to suppress eyewitness identification under R.C. 2933.83(C)(1) or object to testimony regarding the in-court or out-of-court identifications of Williams at trial. Importantly, a jury instruction pursuant to R.C. 2933.83(C)(3) was never requested. Thus, because Williams did not perfect this issue at the trial court level, he has forfeited all but plain error under Crim.R. 52. *See State v. Griffin*, 9th Dist. Summit No. 28829, 2019-Ohio-37, ¶ 31. Crim.R. 52(B) provides in its pertinent part "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

{¶31} We begin by addressing Williams's argument that his due-process rights were violated when the trial court permitted Dep. Danmeyer to testify regarding his identification of Williams via the photo lineup. Because we discussed

the majority of Dep. Danmeyer's testimony in Williams's second assignment of error, and for the sake of brevity, we incorporate that testimony by reference and need only address evidence elicited from Dep. Danmeyer after the suspect evaded apprehension.[6]

{¶32} Relative to this assignment of error, Dep. Danmeyer testified (that after the suspect eluded him) he focused his investigation on the perimeter of the residence and the suspect's vehicle. (*Id.* at 230-239). Dep. Danmeyer testified that he collected evidence from the suspect's vehicle to identify the suspect. (*Id.* at 240). He testified that Dep. Gresham, who was also present on scene, brought it to his attention that a cell-phone (found in the vehicle) belonged to Williams. (*Id.*). Thereafter, Dep. Danmeyer testified that Patrolman Brittany Wyerick obtained a photograph of Williams (from the Lima Police Department's records) and after viewing the image and information related to the image, he identified Williams as the person who fled from him. (*Id.* at 240-241). Moreover, Dep. Danmeyer testified that he saw Williams' face-to-face prior to his flight, was able to describe his height and weight, and that it is his job to be observant. (*Id.* at 252-254, 257-258, 270); (State's Exs. 12, 13).

{¶33} Williams' argues that the identification process employed by law enforcement deprived him of due process. We disagree. The record supports that

---

[6] Notably, Dep. Danmeyer identified William's as the driver of the suspect vehicle in open court. (*Id.* at 226).

-17-

Dep. Danmeyer was involved in a rapidly unfolding investigation after Williams's flight from the scene. Dep. Danmeyer's investigation led him to a photograph of Williams by virtue of his personal observations of Williams along with additional evidence found in the vehicle. The record is void of any evidence that Dep. Danmeyer's out-of-court identification of Williams was based on anything other than his personal observation of Williams at the crime scene. Thus, his argument as to the out-of-court identification (on January 3, 2019) is without merit.

{¶34} Next, William's argues that the procedures for Dep. Danmeyer's photo lineup were impermissibly suggestive, and thus should have been excluded. Importantly, the photo array including Williams was never offered into evidence at trial. Moreover, William's concedes that "[i]n this case the photo array administrations are not in the record so there [was] no opportunity for the [trial c]ourt to review the procedure." (Appellant's Brief at 21-22). Consequently, and because Williams fails to cite any evidence that state actors (in this instance law enforcement) supplied suggestiveness during the photo lineup, William's has failed to establish undue suggestion in the identification process.

{¶35} Accordingly, Williams's third assignment of error is overruled.

**Assignment of Error No. I**

**The Trial Court Committed Error Prejudicial To The Defendant By Improperly Excluding Two African-American Jurors For Cause Over The Objections Of The Defendant.**

{¶36} In the first assignment of error, Williams argues that the trial court prejudiced him by excluding two African-American jurors for cause (over objection), and that the trial court did not permit his trial counsel to rehabilitate the challenged jurors before they were excused.[7] For the following reasons, we disagree.

*Standard of Review*

{¶37} "'[T]he determination of whether a prospective juror should be disqualified for cause is a discretionary function of the trial court. Such determination will not be reversed on appeal absent an abuse of discretion.'" *State v. Allsup*, 3d Dist. Hardin No. 6-10-09, 2011-Ohio-404, ¶ 47 (Jan. 31, 2011), quoting *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990). "This is so because a trial court is in the best position to assess the potential juror's credibility." *Id.* "Accordingly, the trial court's determination will be affirmed absent a showing that the court's attitude is arbitrary, unreasonable, or unconscionable." *Id.*, citing *Berk* at 169.

*Analysis*

---

[7] Williams's appellate counsel further argues that that his trial counsel failed to "correctly" frame his objection, which he avers constitutes ineffective assistance of trial counsel. (Appellant's Brief at 13). Besides this singular sentence, Williams's appellate counsel advances no argument in support of his contention nor did he cite to any portion of the record. Considering Williams did not take the time to support his argument even in the most basic of terms under App.R. 16(A)(7), we decline to address Williams's averment as it relates to his ineffective-assistance-of-counsel claim under App.R. 12(A)(2) under this assignment of error. Moreover, he directs us to an argument that is not contained within the four corners of his brief as the issues he raises in his fourth assignment of error are related to trial counsel's failure to file a pretrial motion to suppress the in-court identification and the timeliness of trial counsel's oral objection to the trial courts excusal of the two jurors and not the framing of the objection itself. *Id.*

{¶38} Juror challenges "for cause" are governed by Crim.R. 24(C) and R.C. 2945.25. *State v. Triplett*, 5th Dist. Stark No. 2013CA00209, 2014-Ohio-3101, 2014 WL 3511850, ¶ 30. In this case, William argues that the trial court abused its discretion by excusing two African American jurors "for cause". Here, we must first determine whether Williams preserved this error for our review. At trial, Williams *did not* object to the trial court's excusal of Thomas "for cause" as a prospective juror contemporaneous with the trial court's excusal. (Oct. 15, 2019 Tr. at 106-107). Williams's counsel did, however, timely object to the excusal of Watkins. (*Id.*). As such, we apply the plain-error rule to our analysis of Williams's challenge to the excusal of Thomas and the abuse-of-discretion standard to his challenge to Watkins.

{¶39} As to Williams's "for cause" argument of the prospective juror, Thomas, Crim.R. 24(C)(14) provides: "A person called as a juror may be challenged for the following causes: That the juror is otherwise unsuitable for any other cause to serve as a juror." R.C. 2945.25(O) likewise provides: "That [s]he otherwise is unsuitable for any other cause to serve as a juror." Similarly to Crim.R. 24(C) and R.C. 2945.25, R.C. 2313.17(B)(9) provides: "[t]he following are good causes for challenge to any person called as a juror: That the person discloses by the person's answers that the person cannot be a fair and impartial juror or will not follow the law as given to the person by the court." Here, the record reveals that after inquiry

by the State, the trial court, and Williams's trial counsel, Thomas expressed uncertainty as to whether she would be able to fairly and impartially determine the facts of this case based on her religious beliefs. (Oct. 15, 2019 Tr., Vol. I, at 50-56). Consequently, the trial court excused her "for cause", *without objection.* (*Id.* at 56, 106-107). Importantly, race played no role in the trial court's excusal "for cause". Accordingly, we find no plain error under the facts presented as to the trial court's excusal of Thomas "for cause".

{¶40} Next, we turn to Williams's challenge to the second prospective juror at issue, Watson. (*Id.* at 74-76). During *voir dire*, Watson indicated that he may have a lack of confidence in law enforcement based on his prior experiences with law enforcement in Lima. (*Id.* at 75). Importantly, Watson acknowledged a generalized bias against the criminal-justice system as a whole, and his unwillingness to set those experiences aside. (*Id.* at 76). After *voir dire* by the State, Williams's trial counsel, and the trial court, Watson held firm to his inability to put aside his prior experiences involving law enforcement in assessing witnesses in the instant case. (*Id.* at 82). Consequently, the trial court excused Watson for cause based upon his answers to questions, not his race. (*Id.*). *See* Crim.R. 24(C)(14); R.C. 2945.25(O); R.C. 2313.17(B)(9). Hence, we cannot say that the trial court's attitude in excusing Watkins for cause was arbitrary, unreasonable, or unconscionable, and thus, constituted an abuse of discretion.

{¶41} Accordingly, Williams's first assignment of error is overruled.

**Assignment of Error No. IV**

**The Trial Counsel For The Defendant Was Ineffective And Therefore Violated The Defendant's Right To Effective Assistance Of Counsel Pursuant To The Sixth And Fourteenth Amendments Of The United States Constitution And Article One Section Ten Of The Ohio Constitution.**

{¶42} In his fourth assignment of error, Williams argues that his trial counsel was deficient in his performance by failing to file a pretrial motion to suppress the in-court identification (of Williams) by Dep. Danmeyer and his trial counsel's "untimely" objection resulting in a limitation on this court's ability to review the claimed error.

*Standard of Review*

{¶43} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). In order to show trial counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the

wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998), citing *State v. Thompson*, 33 Ohio St.3d 1 (1987). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, *Lytle v. Ohio*, 438 U.S. 910, 98 S.Ct. 3135 (1978).

{¶44} "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 3d Dist. Allen No. 1-13-04, 2014-Ohio-259, ¶ 48, quoting *Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

{¶45} In our review of Williams's brief as it pertains to this assignment of error, we find serious and fatal deficiencies therein. Namely, Williams fails to argue how his trial counsel was deficient or unreasonable in his performance by failing to file a motion to suppress Williams's in-court identification and how Williams was prejudiced by such a deficiency. Moreover, Williams fails to direct us to any

citations to the record to support his argument. Accordingly, we decline to address his fourth assignment of error on the basis he has failed to comply with App.R. 12(A)(2) and App.R. 16(A)(7).

**{¶46}** Next, Williams argues that his trial counsel's untimely objection (as to the "for cause" excusal of the prospective jurors Thomas and Watkins) supports his claims of ineffective assistance of counsel. Nevertheless, this portion of his fourth assignment of error is rendered moot in light of our determination of Williams's second assignment of error. *See* App.R. 12(A)(1)(c).

**{¶47}** Accordingly, and for the reasons set forth above, Williams's fourth assignment of error is overruled.

**{¶48}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**PRESTON and SHAW, J.J., concur.**

**/jlr**