[Cite as *State v. Lotzer*, 2021-Ohio-3701.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                    CASE NO. 1-20-30

    v.

PETER A. LOTZER, II,                     O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2019 0431

**Judgment Affirmed**

Date of Decision: October 18, 2021

APPEARANCES:

    *William T. Cramer* for Appellant

    *Jana E. Emerick* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Peter A. Lotzer, II ("Lotzer"), appeals the July 16, 2020 judgment entry of conviction and sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from the October 15, 2019 attempted traffic stop of Lotzer. Subsequent to the attempted stop, Lotzer parked the vehicle and fled from law enforcement on foot. Following a brief pursuit, Lotzer was apprehended and arrested where officers discovered methamphetamine along his flight path.

{¶3} On December 12, 2019, the Allen County Grand Jury indicted Lotzer on one count of aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(b), a third-degree felony. (Doc. No. 4). On December 20, 2019, Lotzer appeared for arraignment and entered a not guilty plea. (Doc. No. 10).

{¶4} On July 1, 2020, Lotzer filed a motion for leave to file a motion in limine, which the trial court granted the same day. (Doc. Nos. 88, 94). Thereafter, Lotzer filed a motion in limine challenging the admissibility of his recorded telephone calls from the Allen County Justice Center ("ACJC") that occurred on October 15, 16, and 17, 2019 as well as the admissibility of a cell-phone-extraction report, which contained incoming and outgoing cell-phone calls, text messages, and images on dates prior to the date of offense. (Doc. No. 95). The trial court held a

motion hearing and trial court reserved ruling on the motion until the evidence was offered at trial. (July 8, 2020 Tr. at 13).

{¶5} Lotzer's case proceeded to a jury trial on July 14 and 15, 2020, and he was found guilty of the single count in the indictment. (Doc. No. 109); (July 15, 2020 Tr., Vol. II, at 319-320). Thereafter, the trial court sentenced Lotzer to 36 months in prison. (Doc. No. 110); (*Id.* at 329). The judgment entry of conviction and sentencing was filed on July 16, 2020. (Doc. No. 110).

{¶6} Lotzer filed his notice of appeal on July 28, 2020, and raises two assignments of error for our review, which we will review separately. (Doc. No. 113).

### Assignment of Error No. I

**The trial court violated appellant's federal and state constitutional rights to due process, and Evid.R. 403(A) and Evid.R. 404(B), by allowing evidence implicating appellant in prior drug use during a trial for drug possession.**

{¶7} In his first assignment of error, Lotzer asserts that the trial court erred when it permitted "other acts" evidence that should have been subject to mandatory exclusion by the trial court on the basis that such evidence was unfairly prejudicial and likely to confuse the jury under Evid.R. 403(A).

*Standard of Review*

{¶8} We review "other acts" evidence under Evid.R. 404(B) through the lense of the three step analysis set forth in *State v. Williams*, 134 Ohio St.3d 521,

2012-Ohio-5695, ¶ 20. *State v. Williams*, 3d Dist. Allen No. 1-19-70, 2021-Ohio-256, ¶ 16. These steps involve a mixed standard of review. *See id.* at ¶ 9-10, citing *State v. Hartman* 161 Ohio St.3d 214, 2020-Ohio-4440, ¶ 22, citing Leonard, *The New Wigmore: Evidence of Other Misconduct and Similar Events*, Section 4.10 (2d Ed.2019). The first two steps (i.e., relevancy under Evid.R. 401 and Evid.R. 402 and the particular purpose the evidence is offered under Evid.R. 404(B)) are intertwined and pose legal questions, and thus, are reviewed under a de novo standard of review. *See State v. Bortree*, 3d Dist. Logan No. 8-20-67, 2021-Ohio-2873, ¶ 46, citing *State v. McDaniel*, 1st Dist. Hamilton No. C-190476, 2021-Ohio-724, ¶ 17 and *Hartman* at ¶ 22, citing Leonard, at Section 4.10. However, the third step (i.e., Evid.R. 403's balancing tests) "constitutes a judgment call", which we review under an abuse-of-discretion standard. *Id.*, at ¶ 48 citing *McDaniel* at ¶ 17 and *Hartman* at ¶ 30.

{¶9} "De novo review is independent, without deference to the lower court's decision." *Williams*, 2021-Ohio-256, ¶ 11 (3d Dist.), quoting *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio*, 64 Ohio St.3d 145, 147 (1992). The term "abuse of discretion" implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Id.*, citing *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

*Analysis*

**{¶10}** "Evid.R. 404(B) categorically prohibits evidence of a defendant's other acts when its only value is to show that the defendant has the character or propensity to commit a crime." *State v. Smith*, 162 Ohio St.3d 353, 2020-Ohio-4441, ¶ 36, citing Evid.R. 404(B). "'[Nevertheless], there are exceptions to the general rule: "It may[] be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."'" *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 56, quoting *State v. May*, 3d Dist. Logan No. 8-11-19, 2012-Ohio-5128, ¶ 69, quoting Evid.R. 404(B). *See also* R.C. 2945.59. "'The list of acceptable reasons for admitting testimony of prior bad acts into evidence is non-exhaustive.'" *Bagley* at ¶ 56, quoting *State v. Persohn*, 7th Dist. Columbiana No. 11 CO 37, 2012-Ohio-6091, ¶ 23. Notably, Evid.R. 404(B) only applies to "[e]vidence of *other* crimes, wrongs, or acts" extrinsic to the charged offense and not those acts that are intrinsic to the offense. (Emphasis added.) *State v. Lester*, 3d Dist. Union Nos. 14-18-21 and 14-18-22, 2020-Ohio-2988, ¶ 43, citing 404(B) and *State v. Hill*, 5th Dist. Stark No. 2018CA00077, 2019-Ohio-3432, ¶ 51-52, citing *Jordan v. Dayton Testing Lab.*, 2d Dist. Montgomery No. 19741, 2004-Ohio-2425, ¶ 48 and *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir.2008).

{¶11} Important to this appeal, Lotzer challenges that he is *not* the person that Investigator Chad Kunkleman ("Inv. Kunkleman") observed at the Leland Avenue residence on October 15, 2019, and the driver of the vehicle who parked a vehicle at the Rosedale Avenue residence and who fled from Patrolman Brittany Wyerick ("Ptlm. Wyerick") along whose flight path drugs were located. (*See* July 14, 2020 Tr., Vol. I, at 130).

{¶12} Lotzer challenges the admission of three distinct evidentiary items, which we will address separately.

*Lotzer's & Pitney's Relationship & Lotzer's ties to 1227 Leland Avenue:*

{¶13} First, Lotzer argues that the trial court plainly erred by permitting the State to introduce evidence regarding William Pitney's ("Pitney") "brother[ly]" relationship with Lotzer and Lotzer's connection to 1227 Leland Avenue. (July 15, 2020 Tr., Vol. II, at 235-238, 259-260). Because Lotzer's trial counsel did not object to the admission of this testimony through Inv. Kunkleman and Investigator Aaron Montgomery ("Inv. Montgomery"), we apply a plain-error analysis to this part of Lotzer's argument. *See* Crim.R. 52(B).

{¶14} A review of the record reveals that the State's lead witness, Inv. Kunkleman, testified that several complaints from local residents were received by law enforcement regarding suspicious activity at 1227 Leland Avenue. (July 14, 2020 Tr., Vol. I, at 116-118). Because of such complaints, Lima City Police

Department Inv. Kunkleman and Patrolman Mericle ("Ptlm. Mericle") engaged in a surveillance operation of the Leland Avenue residence. (*Id.* at 117-118). As a result of the surveillance, Inv. Kunkleman testified that he believed that drug-related activity was occurring at the residence. (*Id.*).

{¶15} Inv. Kunkleman testified that, on the date of Lotzer's arrest (October 15th), he (initially) observed Lotzer parked in the Leland Avenue residence's driveway. (*Id.* at 122-124). However, shortly thereafter, Lotzer goes to the door (but does not go inside) and then drives away. (*Id.*). According to Inv. Kunkleman, Ptlm. Mericle (the passenger in Inv. Kunkleman's cruiser) observed Lotzer commit a traffic violation when he drove from the residence. (*Id.* at 124). (*See* Def. Ex. A). As a result (of the traffic violation), Inv. Kunkleman radioed other officers in the area to initiate a traffic stop of Lotzer. (*Id.* at 123). Inv. Kunkleman testified Ptlm. Wyerick radioed him and advised that Lotzer's vehicle had turned onto Rice Avenue and was now parked at a residence on Rosedale Avenue. (*Id.* at 124-126).

{¶16} Inv. Kunkleman testified that he, Ptlm. Mericle, and Patrolman Synder apprehended Lotzer in that area and arrested him. (*Id.* at 127). At the time of his arrest, Inv. Kunkleman confiscated Lotzer's keys and his wallet containing Lotzer's photo identification ("I.D.") from his person. (*Id.* at 127-128). (*See* July 15, 2020 Tr., Vol. II, at 259-260); (State's Ex. 21). Inv. Kunkleman identified Lotzer (in

open court) as the same individual he observed at the Leland Avenue residence and later arrested. (*Id.* at 128).

{¶17} Inv. Montgomery testified that he received reports from Inv. Kunkleman regarding suspected drug activity at the Leland Avenue residence. (July 15, 2020 Tr., Vol. II, at 233-234). Based upon such information, Inv. Montgomery initiated a concurrent investigation by the West Central Ohio Crime Task Force, which ultimately led to the arrest of a resident of the Leland Avenue residence, William Pitney for drug-related activity.[1] (*Id.* at 234-236.). Inv. Montgomery testified that because he was aware of a close relationship between Pitney and Lotzer he wanted to meet with Lotzer, Inv. Kunkleman, and Ptlm. Mericle after Lotzer was booked into the jail.[2] (*Id.* at 238).

{¶18} Although this evidence clearly assists the trier of fact in the identification of Lotzer as the driver of the vehicle observed by Inv. Kunkleman and Ptlm. Wyerick and the person who fled from Ptlm. Wyerick along the path where illegal drugs were ultimately discovered, it is not "evidence of *other* crimes, wrongs, or acts" within the meaning of Evid.R. 404(B). (Emphasis added.) Evid.R. 404(B). *See Lester*, 2020-Ohio-2988, at ¶ 43, citing *State v. Carter*, 3d Dist. Allen No. 1-15-62, 2017-Ohio-1233, ¶ 73. Evid.R. 404(B) applies to the admission of "evidence of

---

[1] It is unclear from our review of the record whether Pitney was arrested for drug-related activity before or after Lotzer was arrested for the instant offense.

[2] Inv. Montgomery testified that Lotzer and Pitney were "[v]ery close friends" who "called themselves brothers." (July 15, 2020 Tr., Vol. II, at 237-238).

other crimes, wrongs, or acts" *extrinsic* to the charged offense and not those acts *intrinsic* to the offense because they are outside the purview of Evid.R. 404(B). *Id.,* citing *Hill*, 2019-Ohio-3432, at ¶ 51-52, citing *Jordan*, 2004-Ohio-2425, at ¶ 48 and *Siegel*, 536 F.3d at 316. Here, the testimony provided by law enforcement is offered to identify Lotzer as the person driving the car from the Leland Avenue residence. *See id.*

{¶19} Moreover, this evidence provides an explanation as to why Lotzer's property (his keys and wallet containing his I.D.) confiscated from his person during his arrest and subsequently placed into his jail property was later discovered at the Leland Avenue residence during the execution of a search warrant on October 24, 2019 even though Lotzer was in jail on the instant criminal charge since being booked on October 15th. (July 15, 2020 Tr., Vol. II, at 259-260); (State's Ex. 21). (*See* State's Ex. 4). Indeed, Inv. Montgomery testified that Pitney's girlfriend (Victoria) came to the jail and signed out Lotzer's property. (*Id.* at 260); (*See* State's Ex. 4). Inv. Montgomery further testified that the plastic baggies that were recovered during the execution of the search warrant on October 24th and located inside the 1227 Leland Avenue residence appeared to be identical to the "baggies that were packaged, or, that were located" along Lotzer's flight path on October 15th. (July 15, 2020 Tr., Vol. II, at 257-261); (State's Exs. 19, 20). To us, Lotzer has failed to establish how this evidence (i.e., his relationship to Pitney and ties to

the Leland Avenue residence) demonstrates "evidence of *other* crimes, wrongs, or acts" bringing him within the scope of Evid.R. 404(B). *See Lester* at ¶ 43, citing *Hill* at ¶ 51-52, citing *Jordan* at ¶ 48, citing *Seigel* at 316.

**{¶20}** Accordingly, the testimonies of Inv. Kunkleman and Inv. Montgomery regarding Lotzer's relationship with Pitney and his connection to 1227 Leland Avenue do not fall within the sphere of "other acts" evidence under Evid.R. 404(B), and this portion of Lotzer's argument is without merit.

*State's Exhibit 17*

**{¶21}** The next part of Lotzer's argument asserts that State's Exhibit 17 (the October 17th jail call) and testimony offered through Inv. Montgomery where Lotzer stated in a jail house telephone conversation that law enforcement found "less than a ball" at the crime scene is also "other acts" evidence. Initially, Lotzer challenged the admission of his jail calls in his motion in limine. (Doc. No. 95); (July 8, 2020 Tr. at 5-6, 12); (State's Exs. 1, 2). However, he abandoned later challenges to the admission of that evidence after the jail calls were "redacted" by not objecting during Inv. Montgomery's testimony or during the admission of State's Exhibit 17. (July 15, 2020 Tr., Vol. II, at 253); (State's Ex. 17). Consequently, we apply a plain-error analysis to this this part of Lotzer's argument. *See* Crim.R. 52(B).

{¶22} Lotzer's statements made during the course of his jailhouse call (in State's Exhibit 17) after his arrest and detailed by Inv. Montgomery's testimony are noteworthy because law enforcement had never disclosed the weight of the drugs discovered along Lotzer's flight path. (*Id.* at 254). Significantly, the weight of the drugs found along Lotzer's flight path constituted (3.47 grams +/- 0.04 grams of methamphetamine). And in Lotzer's jail call, he stated the weight of the drugs found by law enforcement to be "less than a ball", which is consistent with an eighth of an ounce of drugs or 3.5 grams (as used in street slang—an eight "ball"). (*Id.*); (State's Exs. 8, 13, 14, 16).

{¶23} Though this evidence is certainly probative of identity and Lotzer's culpable mental state (identifying Lotzer as the *"person"* who *"knowingly"* "possess[ed]" the methamphetamine, elements of the instant offense), it is not "[e]vidence" of "*other* crimes, wrongs, or *acts*" as set forth in Evid.R. 404(B). Not all evidence regarding a defendant's behavior constitutes "other acts" evidence. *See*, *e.g.*, *State v. Patton*, 74 Ohio App.3d 224, 229 (3d Dist.1991) (concluding that testimony regarding the defendant's *oral statements* and comments did not constitute "other acts" evidence). The definition of the word "act" includes "the process of doing something; action" and "[s]omething that is done or performed; deed." *Patton* at 229; s*ee also* Black's Law Dictionary, act (11th ed.2019). Here, we conclude that Lotzer's *oral statement* implicating himself in his aggravated-

possession-of-drugs charge does not constitute an "act" within the meaning of Evid.R. 404(B). Accordingly, this portion of Lotzer's argument is without merit. *See id.*

*State's Exhibit 15*

**{¶24}** The last part of Lotzer's argument revolves around the testimony of Inv. Montgomery and State's Exhibit 15—the cell-phone-extraction report from the LG cell-phone found in the parked vehicle where Lotzer's flight commenced.[3] (State's Exs. 10, 15). (*See* July 14, 2020 Tr., Vol. I, at 217-224); (July 15, 2020 Tr., Vol. II, at 245-247). The record reveals that Lotzer objected to Exhibit 15 by virtue of a motion in limine and at trial specifically focusing on a cell-phone-text message (from September 16, 2019) that stated "But, I should be good for a ball" arguing admission of this statement is violative of Evid.R. 402 and 403. (July 14, 2020 Tr., Vol. I, at 85-86, 88-93). The State argued that State's Exhibit 15 was being offered to prove the identity of the user of the LG phone and the use of street terminology as to the meaning of "ball". (*Id.* at 91-93). The trial court permitted the admission of the State's Exhibit 15 to identify the user of the LG phone and the specific text message subject to further testimony to be provided by the State. (*See id.* at 92-93).

---

[3] Although, two cell-phones were recovered from the vehicle (i.e., a Samsung and LG), no cell-phone-extraction report could be generated from the Samsung device because it is encrypted. (July 14, 2020 Tr., Vol. I, at 172, 215-217); (State's Exs. 10, 11).

Thus, because Lotzer contemporaneously objected, he has preserved error for our review.

{¶25} Indeed, this evidence implicates Evid.R. 404(B) since it is "evidence of *other* crimes, wrongs, or acts" extrinsic (having occurred prior in time) to the indicted offense (i.e., aggravated possession of drugs). Consequently, we analyze State's Exhibit 15 and the related testimony under *Williams* because it falls within the purview of Evid.R. 404(B). *See Lester*, 2020-Ohio-2988, at ¶ 47.

{¶26} In order to apply the first and second steps of the *Williams* analysis, we undertake a review of the testimony from Lotzer's trial. At trial, the State presented Inv. Montgomery who testified that he was able to determine that the LG cell-phone belonged to Lotzer because Lotzer referenced (himself) by name when texting others; because there were selfies of Lotzer on the phone; and because the settings on the phone auto-filled Lotzer's personal information in applications on the phone. (July 15, 2020 Tr., Vol. II, at 245-247). Moreover, Inv. Montgomery testified that Lotzer's jail calls placed through Securus, the software utilized by the ACJC, were made to the same telephone numbers listed in Lotzer's contacts on the LG cell-phone. (*Id.* at 247); (State's Ex. 16, 17, 18). Importantly, Inv. Montgomery testified that during the course of Lotzer's jail calls Lotzer stated "they have *my* phones and they won't give them back" or "*my* phones were in the car". (Emphasis added.) (*Id.* at 247-248). (*See* State's Exs. 10, 11). Under the facts presented, the

trial court did not err in determining that State's Exhibit 15 was relevant and related to Lotzer's identity.

{¶27} In applying the third step of the *Williams* analysis, we are not able to determine that Inv. Montgomery's testimony (that Lotzer was the owner of the LG phone and Lotzer's jailhouse calls were in harmony with Lotzer's texting patterns as to content and use of street slang) """"is [ ] [unfairly] prejudicial 'because the trial court instructed the jury that this evidence could not be considered to show that [Lotzer] acted in conformity with a character trait.'"""".[4] *Lester* at ¶ 47, quoting *State v. Jones*, 3d Dist. Logan No. 8-16-18, 2017-Ohio-4351, ¶ 13, quoting *State v. Wendel*, 3d Dist. Union No. 14-16-08, 2016-Ohio-7915, ¶ 28, quoting *Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, at ¶ 24, (concluding "[t]he trial court's limiting instruction lessened any prejudicial effect of the evidence"). (*See* July 15, 2020 Tr., Vol. II, at 250, 310). Nevertheless, the trial court provided the jury with a *well-tailored* limiting instruction as to the purpose of this "[e]vidence of *other* crimes, wrongs, or acts" and mitigated the risk of unfair prejudice, confusion of the issues, or misleading the jury.[5] *See Hartman* at ¶ 66. Thus, any prejudicial effect did not substantially outweigh the probative value of the evidence. *See id.*; *State v. Regan*,

---

[4] Importantly, Inv. Montgomery never quoted the September 16th text message or alluded to it, rather he testified that the content of the data on the LG phone and pattern of speech is consistent with Lotzer's jailhouse calls. (*See* July 15, 2020 Tr., Vol. II).

[5] The limiting instruction in the instant case was specifically tailored to the underlying facts of Lotzer's case. (*See* July 15, 2020 Tr., Vol. II, at 310). The jury was explicitly instructed that State's Exhibit 15 "was received only for the limited purpose, to prove the identity of the person to whom the LG phone belonged." (*Id.*).

5th Dist. Delaware No. 13 CAA 08 0067, 2014-Ohio-3797, ¶ 19. *See also Wendel* at ¶ 28, citing *Williams* at ¶ 24.

**{¶28}** Accordingly, the trial court did not err by admitting State's Exhibit 15 and related testimony under Evid.R. 404(B).

**{¶29}** Accordingly, Lotzer's first assignment of error is overruled.

## Assignment of Error No. II

**Appellant's rights to effective assistance of counsel under the federal and state constitutions were violated when trial counsel failed to object to evidence of appellant's involvement with drugs during a trial for drug possession.**

**{¶30}** In his second assignment of error, Lotzer argues that his trial counsel was deficient in her performance by failing to object to impermissible nonpropensity evidence. Specifically, Lotzer asserts that trial counsel's failure to object to evidence related to Pitney's and Lotzer's relationship and evidence that tied Lotzer to 1227 Leland Avenue rendered trial counsel's performance deficient, thereby, prejudicing Lotzer.

*Standard of Review*

**{¶31}** A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). In order to show trial counsel's conduct was

deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, *Lytle v. Ohio*, 438 U.S. 910, 98 S.Ct. 3135 (1978).

{¶32} "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 3d Dist. Allen No. 1-13-04, 2014-Ohio-259, ¶ 48, quoting *Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

{¶33} Because we concluded in Lotzer's first assignment of error that no impermissible nonpropensity evidence was admitted into evidence by the trial court,

and since this is the sole basis for which Lotzer argues that his trial counsel's performance was not objectively reasonable thereby prejudicing him, Lotzer's second assignment of error is not well-taken in light of our determination of Lotzer's first assignment of error.

{¶34} Accordingly, and for the reasons set forth above, Lotzer's second assignment of error is overruled.

{¶35} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J., and MILLER, J., concur.**

**/jlr**