[Cite as *State v. Morris*, 2022-Ohio-3608.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### HENRY COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                    CASE NO. 7-21-05

    v.

BRANDON MORRIS,                        **O P I N I O N**

    DEFENDANT-APPELLANT.

---

Appeal from Henry County Common Pleas Court

Trial Court No. 21 CR 0006

Judgment Affirmed

Date of Decision: October 11, 2022

---

APPEARANCES:

    *Joseph C. Patituce* **for Appellant**

    *Gwen Howe-Gebers* **for Appellee**

Case No. 7-21-05

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Brandon Morris ("Morris"), appeals the August 17, 2021 judgment entry of the Henry County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} The genesis of this case is the trespass of a person into the mudroom of N.R.'s home in the early morning hours of January 4, 2021. N.R. is the minor daughter of Michelle O.R. A digital image of an unknown person was captured by a motion-activated security camera and a "push" notification was sent to Michelle's cellphone.[1] The "push" notification contained a pop-up alert reporting that motion had been detected at the home's backdoor along with a digital image depicting that area.

{¶3} On January 27, 2021, the Henry County Grand Jury indicted Morris on one count of burglary in violation of R.C. 2911.12(A)(2), (D), a second-degree felony and one count of menacing by stalking in violation of R.C. 2903.211(A)(1), (B)(2)(a), a fourth-degree felony. On February 11, 2021, Morris appeared for arraignment and entered not guilty pleas. On June 9, 2021, Morris filed a notice of

---

[1] A digital image is analogous to a photograph taken with a film camera. *See Wal-Mart Stores, Inc. v. Chavez*, 2018 WL 3957131, *13 (Md.App. Aug. 17, 2018). It is an image captured as digitized data using a digital device or machine and stored in an image-file format. A push notification is a message that is pushed directly to a user's digital device by an installed application ("app") even when the app is not open or when the device's lock screen is activated.

alibi, and on July 1, 2021, the State filed its notice of intent to use evidence of other crimes, wrongs or acts, which Morris opposed.

{¶4} Morris's case proceeded to trial on July 7, 2021 wherein Morris was found guilty (by a jury) of both criminal counts in the indictment.

{¶5} Thereafter, the trial court sentenced Morris on Count One (burglary) to an indefinite minimum prison term of seven years to an indefinite maximum prison term of 10.5 years and on Count Two (menacing by stalking) to 12 months in prison to be run concurrently to Count One. The judgment entry was filed on August 17, 2021.

{¶6} Morris filed a timely notice of appeal and raises five assignments of error for our review. We will review Morris's assignments of error in the order of presentation.

### Assignment of Error No. I

**The Trial Court Erred By Improperly Allowing The Admission Of Other Acts Evidence Over The Objection Of Appellant That Did Not Establish A Behavioral Fingerprint, Or Modus Operandi.**

{¶7} In his first assignment of error, Morris asserts that the trial court erred when it permitted the admission of "other acts" into evidence. Specifically, Morris argues that the State did not establish a *modus operandi*, and thus allowed the admission of "other acts" into evidence that was inflammatory and prejudicial under Evid.R. 403(A).

*Standard of Review*

**{¶8}** We review "other acts" evidence under Evid.R. 404(B) through the lense of the three-step analysis set forth in *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 20.  *State v. Williams*, 3d Dist. Allen No. 1-19-70, 2021-Ohio-256, ¶ 16.  These steps involve a mixed standard of review.  *See id.* at ¶ 9-10, citing *State v. Hartman* 161 Ohio St.3d 214, 2020-Ohio-4440, ¶ 22, citing Leonard, The New Wigmore: Evidence of Other Misconduct and Similar Events, Section 4.10 (2d Ed.2019).  The first two steps (i.e., relevancy under Evid.R. 401 and 402 and the particular purpose the evidence is offered under Evid.R. 404(B)) are intertwined and pose legal questions, and thus, are reviewed under a de novo standard of review.  *See State v. Bortree*, 3d Dist. Logan No. 8-20-67, 2021-Ohio-2876, ¶ 46, citing *State v. McDaniel*, 1st Dist. Hamilton No. C-190476, 2021-Ohio-724, ¶ 17 and *Hartman* at ¶ 22, citing Leonard, Section 4.10.  However, the third step (i.e., the Evid.R. 403 balancing tests) "constitutes a judgment call", which we review under an abuse-of-discretion standard.  *Id.*, at ¶ 48 citing *McDaniel* at ¶ 17; *see also Hartman* at ¶ 30.

**{¶9}** "De novo review is independent, without deference to the lower court's decision."  *Williams*, 2021-Ohio-256, ¶ 11 (3d Dist.), quoting *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio*, 64 Ohio St.3d 145, 147 (1992).  "An abuse of discretion

implies that the trial court acted unreasonably, arbitrarily, or unconscionably." *Id.*, citing *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

*Analysis*

{¶10} "Evid.R. 404(B) categorically prohibits evidence of a defendant's other acts when its only value is to show that the defendant has the character or propensity to commit a crime." *State v. Smith*, 162 Ohio St.3d 353, 2020-Ohio-4441, ¶ 36, citing Evid.R. 404(B). "'[Nevertheless], there are exceptions to the general rule: "[i]t may[] be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."'" *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 56, quoting *State v. May*, 3d Dist. Logan No. 8-11-19, 2012-Ohio-5128, ¶ 69, quoting Evid.R. 404(B). *See also* R.C. 2945.59. "'The list of acceptable reasons for admitting testimony of prior bad acts into evidence is non-exhaustive.'" *Bagley* at ¶ 56, quoting *State v. Persohn*, 7th Dist. Columbiana No. 11 CO 37, 2012-Ohio-6091, ¶ 23. Notably, Evid.R. 404(B) only applies to "[e]vidence of *other* crimes, wrongs, or acts" extrinsic to the charged offense and not those acts that are intrinsic to the offense. (Emphasis added.) *State v. Lester*, 3d Dist. Union Nos. 14-18-21 and 14-18-22, 2020-Ohio-2988, ¶ 43, citing 404(B).

{¶11} Here, Morris challenges the admission of State's Exhibit 2c, a written excerpt from a notebook, which was located in Morris's car by law enforcement.[2] Morris contends that by admitting the exhibit, the trial court allowed "other acts" into evidence that occurred outside indicted-time frames.

{¶12} Even though Morris's arguments relate to "other acts" evidence, we conclude that the notebook excerpt was not inadmissible under Evid.R. 404(B) since the statements Morris made in his notebook do not refer to any "*other* crimes, wrongs, or acts". Put more plainly, the excerpts are Morris's journalized ideas or thoughts, not his past crimes. Moreover, not all evidence concerning a criminal defendant's behavior constitutes "other acts" evidence. *See State v. Lotzer*, 3d. Dist. Allen No. 1-20-30, 2021-Ohio-3701, ¶ 23.

{¶13} We conclude the notebook was not admitted to prove the "type" of person Morris is in order to show that he "act[ed] in conformity therewith" in the instant case. Rather, Morris's written assertions (in the notebook) were admissible under Evid.R. 801(D)(2)(a) as statements of a party opponent because it was Morris's "own statement, in either an individual or a representative capacity."[3]

---

[2] The notebook was found by law enforcement during a search of Morris's vehicle in 2018.

[3] Although in Morris's brief, he challenges the veracity and authenticity of his statements on appeal. There is no indication the State failed to authenticate the notebook or that the defense voiced an objection *at trial*. Moreover, besides this singular sentence, Morris's appellate counsel advances no argument in support of his contention. Considering Morris did not take the time to support his argument even in the most basic of terms under App.R. 16(A)(7), we decline to address Morris's averment as it relates to admissibility of the exhibit under App.R. 12(A)(2) under this assignment of error. Nevertheless, we would note that the threshold for admissibility is low, and that veracity goes to weight and not the admissibility of such statements. *See State v. Hatfield,* 2d Dist. Montgomery No. 28990, 2022-Ohio-148, ¶ 84, 100.

Morris's excerpts merely provided context for his burglary and menacing-by-stalking charges and were offered "to prove the truth of the matter asserted in the statement". That is–State's Exhibit 2c explained why Morris was a suspect in the investigation, because N.R. was identified in his writings as a person that he *planned* to stalk, abduct, and ultimately rape. Thus, the admission of this exhibit by the trial court was not erroneous. Accordingly, Morris's first assignment of error is overruled.

## Assignment of Error No. II

**The Trial Court Erred By Improperly Allowing An Officer To Testify As An Expert In Forensic Video Identification When That Officer Had No Training In The Area And He [sic] Was Only "40% Sure" Of The Identification.**

{¶14} In his second assignment of error, Morris argues that the trial court erred by permitting a witness (who happens to be a law enforcement officer) to testify as an expert witness. Specifically, Morris asserts that the State did not comply with the requirements of Crim.R. 16(K) and that the witness's out-of-court identification of Morris was tainted by her prior dealings with Morris.

*Standard of Review*

{¶15} The admissibility of an expert's testimony is a matter committed to the sound discretion of the trial court, and the trial court's ruling will not be reversed absent an abuse of that discretion. *State v. Hawkey*, 3d Dist. Defiance No. 4-14-03, 2016-Ohio-1292, ¶ 76, citing *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-

3561, ¶ 9. A trial court has abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *State v. Boles*, 2d Dist. Montgomery No. 23037, 187 Ohio App.3d 345, 2010-Ohio-278, ¶ 16-18. *State v. Waldock*, 3d Dist. Seneca No. 13-14-22, 2015-Ohio-1079, ¶ 62, citing *Boles* at ¶ 16-18. An appellate court may not substitute its judgment for that of the trial court when applying the abuse-of-discretion standard. *Waldock* at ¶ 62, citing *State v. Slappey*, 3d Dist. Marion No. 9-12-58, 2013-Ohio-1939, ¶ 12.

*Analysis*

**{¶16}** The Rules of Evidence delineate two forms of witness testimony: lay and expert. "Different rules govern the admissibility of opinion testimony from expert witnesses and lay witnesses." *State v. Duncan*, 3d Dist. Allen No. 1-19-75, 2020-Ohio-3916, ¶ 8.

> The distinction between lay and expert witness opinion testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'

*State v. McKee*, 91 Ohio St.3d 292, 2001-Ohio-41, fn. 2, quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992), *superseded on other grounds by statute*.

**{¶17}** Evid.R. 104(A) requires trial courts to determine whether an individual qualifies as an expert witness. *State v. Hartman*, 93 Ohio St.3d 274, 285 (2001). The rule states: "[p]reliminary questions concerning the qualification of a person to be a witness * * * shall be determined by the court * * *." Courts should

favor the admissibility of expert testimony when the expert testimony is relevant and meets the Evid.R. 702 criteria. *See State v. Williams*, 4 Ohio St.3d 53, 57 (1983), quoting *State v. Williams*, 388 A.2d 500, 503 (Me.1978) (explaining that the "'fundamental philosophy'" expressed in the Rules of Evidence generally favors the admissibility of expert testimony when helpful and relevant). An expert witness's testimony must be evaluated under Evid.R. 702, which reads:

> A witness may testify as an expert if all of the following apply:
>
> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
>
> (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
>
> (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
>
> (2) The design of the procedure, test, or experiment reliably implements the theory;
>
> (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

Evid.R. 702. "The Ohio Supreme Court has clearly held that police officers may qualify as expert witnesses where they possess specialized knowledge that will

assist the fact-finder." *State v. Essa*, 8th Dist. Cuyahoga No. 94826, 2011-Ohio-2513, ¶ 132, citing *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, ¶ 116.

**{¶18}** On the other hand, a lay witness may testify about opinions or inferences that are "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Evid.R. 701. Namely, a witness must have first-hand knowledge of the subject of his or her testimony and the opinion must be one that a rational person would form based on the observed facts. It also must help the trier of fact in understanding the testimony of the witness or determining a fact in issue. *Id. See also* Evid.R. 104(B), 401, 402, 602.

**{¶19}** Because Morris did not object to any portion of Sargeant Tera Rogers's ("Rogers") testimony, we review his assertions for plain error. *See* Crim.R. 52(B).

**{¶20}** Significantly, the record reveals that the State never requested that the trial court qualify Rogers as an expert witness. Rather, the State offered her testimony (at trial) as a lay witness. Hence, since this portion of Morris's argument relates to Rogers qualification as an expert witness, and because she testified only as a lay witness, any assertion that there was the absence of compliance with Crim.R. 16(K) lacks merit.

{¶21} The second portion of Morris's argument relates to the assertion that Roger's out-of-court identification of Morris was tainted by her prior interactions with him. However, the record does not support this contention. The record reveals that Rogers viewed the digital still image of the person who made entry into N.R.'s home on her own personal social-media account. After thinking that the person in the image looked like Morris, Rogers enlarged the still image by 40%, and compared it to the trail-camera images from Gardenscape and the Archbold-Police-Department-lobby video from her interaction with Morris in December 2020.[4] At trial, Rogers testified that she was able to identify Morris in the still image based upon her knowledge of him including: her familiarity with his facial features; his attire; his gait; and his posture.

{¶22} In our view, Rogers's testimony was reasonably based on good police work regarding identifying Morris through her knowledge of him. Hence, Morris's suggestion that Roger's testimony was tainted by prior dealings is misplaced because the jury was in the best position to determine the credibility of Rogers's testimony.

{¶23} Accordingly, and for the reasons set forth above, Morris's second assignment of error is overruled.

---

[4] Gardenscape is a business located in Archbold, Ohio. Gardenscape maintained a trail camera on a ditch on the business's property. After seeing the social-media posts regarding the break-in and receiving notifications from the trail camera at his office and on his cellphone, David Barnum, the site manager, contacted N.R.'s father to tell him he had digital images of the person that may have broken into his house.

**Assignment of Error No. III**

**Appellant Was Convicted Upon Insufficient Evidence When The State Failed To Prove Each And Every Element Of The Offenses Charged Beyond A Reasonable Doubt.**

**Assignment of Error No. IV**

**Appellant's Convictions Were Against The Manifest Weight Of The Evidence.**

{¶24} In his third and fourth assignments of error, Morris asserts that his convictions are not based on sufficient evidence and are against the manifest weight of the evidence. Particularly, in his third assignment of error, Morris argues that the State presented insufficient evidence as to the issue of identity for both his burglary and menacing-by-stalking convictions and the element "pattern of conduct" pertaining to his menacing-by-stalking conviction. In his fourth assignment of error, he asserts that the witnesses were not credible to identify Morris as the perpetrator of the crimes herein.

*Standard of Review*

{¶25} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997).

Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33.

{¶26} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by state constitutional amendment*, *Smith* at 89, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d

Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Sufficiency of the Evidence Analysis*

**{¶27}** Morris was found guilty of burglary in violation of R.C. 2911.12, which provides in its relevant parts:

> (A)  No person by * * * stealth * * * shall * * *:
>
> * * *
>
> (2)  Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent * * * habitation when any person * * * is present or likely to be present, with purpose to commit in the habitation any criminal offense;
>
> * * *
>
> (D) Whoever violates division (A) of this section is guilty of burglary. A violation of division (A)(1) * * * of this section is a felony of the second degree. * * *.

R.C. 2911.12(A)(2), (D).

**{¶28}** Morris was also found guilty of menacing by stalking in violation of R.C. 2903.211.  R.C. 2903.211(A)(1) states in its pertinent part:

> No person by engaging in a *pattern of conduct* shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person * * *.

(Emphasis added.)  R.C. 2903.211(D) defines "[p]attern of conduct" to mean "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents * * *."

{¶29} Menacing by stalking is generally a misdemeanor of the first degree; however, there are exceptions to this general rule that elevate the offense to a fourth-degree felony when certain facts are present.  *See* R.C. 2903.211(B)(1)-(3). Relevant to the instant case, one of those facts relates to whether an offender previously has been convicted of a violation of this section.  *See* R.C. 2903.211(B)(2)(a).

{¶30} Since Morris does not dispute any of the underlying elements of the offenses of which he was found guilty, other than identity and "pattern of conduct" (as it relates to the jury's finding of guilt for menacing by stalking), we need only address those issues.

{¶31} We begin by addressing the portion of his argument related to identity. The crux of Morris's argument here is that no testifying witness (at trial) could identify Morris as the person who entered the home's mudroom, other than, Rogers. Moreover, he asserts that there was no direct evidence linking Morris to the crime scene.  His argument is predicated on the assumption that Rogers's testimony is inadmissible expert testimony and that Rogers's out-of-court identification of

Morris was tainted by her prior dealings, which is contrary to our conclusion in his second assignment of error.

**{¶32}** Even though Rogers was the only witness who could identify Morris as the person in the still image offered by the State, other witnesses were able to identify Morris's build, his clothing, and his direction of travel.[5] Moreover, their description of Morris's clothing was consistent with evidence found during the execution of the search warrant at Morris's parent's home by the police.[6] Significantly, a green coat described by N.R.'s father as being worn by the intruder was located in Morris's basement (covered in mud). The coat had at least one identifying feature, a tear or hole in the lower portion of the left pocket, that was visible in one of the Gardenscape trail-camera images. To us, Morris is arguing that the State's case was only circumstantial. However, a jury's finding of guilt is not based on insufficient evidence merely because the evidence supporting it is circumstantial. *Jenks*, 61 Ohio St.3d at 259, paragraph one of the syllabus. Circumstantial evidence is that which can be "inferred from reasonably and justifiably connected facts." *State v. Fairbanks*, 32 Ohio St.2d 34 (1972), paragraph five of the syllabus. Circumstantial evidence inherently possesses the same

---

[5] Notably, Morris's parent's residence is approximately two miles from N.R.'s parent's residence. At least one of the witnesses observed a person wearing similar clothing walking through freshly plowed farm fields on the night the crimes occurred.

[6] Law-enforcement officers recovered boots with fresh mud, wet jeans (recently placed in the washing machine), and a single black glove.

probative value as direct evidence. *State v. Lott*, 51 Ohio St.3d 160, 167 (1990); s*ee also State v. Treesh*, 90 Ohio St.3d 460, 485 (2001). Moreover, "[a] conviction can be sustained based on circumstantial evidence alone." *State v. Franklin*, 62 Ohio St.3d 118, 124 (1991).

{¶33} Based upon the conclusion we reached in Morris's second assignment of error and the additional evidence we highlighted above, and viewing the evidence in a light most favorable to the State, we conclude that there was sufficient credible evidence that allowed the trier of fact (the jury) to find beyond a reasonable doubt that Morris was the person who committed the crimes of burglary and menacing-by-stalking.

{¶34} Next, we turn to the portion of his argument related to "pattern of conduct" wherein Morris asserts that the State failed to establish a pattern of conduct since he argues the State did not establish the requisite number of "actions or incidents".[7] *See* R.C. 2903.211(D)(1). We disagree.

{¶35} Here, the State presented Morris's notebook that named N.R. as a person that he planned to stalk, abduct, and rape. The State also presented evidence that Morris (while under the supervision of the probation department and prohibited from using a device that connected to the internet) searched for N.R. on the internet.

---

[7] Indeed, Morris is not disputing the temporal proximity of the "actions or incidents" or that such "actions or incidents" did not cause N.R. mental distress; thus, we will only address his assertion that there were not "two or more actions or incidents". *See* R.C. 2903.211(D)(1)-(2).

Lastly, the State presented evidence establishing that Morris was identified as the person in the digital image who entered into the mudroom of N.R.'s home.

**{¶36}** Viewing the evidence in a light most favorable to the State, we conclude there was sufficient evidence presented whereby a reasonable trier of fact (the jury) could conclude that Morris engaged in a "pattern of conduct" since there were "two or more actions or incidents" as detailed above.

**{¶37}** Given the foregoing, we conclude that sufficient evidence was presented whereby a reasonable trier of fact could conclude beyond a reasonable doubt that Morris engaged in a "pattern of conduct" as contemplated by R.C. 2903.211(D)(1).

**{¶38}** Accordingly, his third assignment of error is overruled.

**{¶39}** Next, we turn to Morris's manifest-weight-of-the evidence arguments.

*Manifest Weight of the Evidence Analysis*

**{¶40}** Here, Morris raises the same argument (i.e., identity) as he raised in his sufficiency-of-the-evidence argument. In addition to the evidence we summarized in our sufficiency-of-the-evidence analysis, Morris also presented several alibi witnesses (his mother, uncle, and grandfather) all of whom testified at trial. Their testimony revealed that Morris lived with them. According to those witnesses, on the night of January 3, 2021 and until the early morning hours of January 4, 2021 (when the crimes occurred), Morris was at home with them

watching television.   Even though, each of the witnesses' accounts had minor discrepancies, the substantive testimony supported that Morris was at home watching television until sometime between 12:15a.m. to 1:00a.m.   Here, Morris argues that since no other witnesses were able to identify him in the trespass, other than Rogers, and because her testimony should be deemed inadmissible, the jury should have weighed his alibi witnesses' testimony more heavily.   We disagree.

{¶41} "Although we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for the trier of fact." *State v. Banks*, 8th Dist. Cuyahoga No. 96535, 2011-Ohio-5671, ¶ 13, citing *DeHass*, 10 Ohio St.2d 230, at paragraph one of the syllabus.

{¶42} Significant to us, the jury had the opportunity to observe all of the witnesses who testified on behalf of the State and the defense.   After weighing the evidence presented, the jury reached the conclusion contrary.   Indeed, the jury "is best able 'to view the witnesses and observe their demeanor, gestures[,] and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81 (1984). Certainly, it is within the province of the jury to parse out the credible portions of the testimony, principally as it pertained to Morris's alibi witnesses when juxtaposed with the State's evidence presented. *See State v. Wainwright*, 7th Dist.

Mahoning No. 119 MA 0023, 2020-Ohio-623, ¶ 37, citing *State v. Mastel*, 26 Ohio St.2d 170, 176-177 (1971). Moreover, "'"[a] verdict is not against the manifest weight of the evidence because the [jury] chose to believe the State's witnesses rather than the defendant's version of the events."'" *State v. Missler*, 3d Dist. Hardin No. 6-14-06, 2015-Ohio-1076, ¶ 44, quoting *State v. Bean*, 9th Dist. Summit No. 26852, 2014-Ohio-908, ¶ 15, quoting *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16.

{¶43} After reviewing the entire record, we will not say that the evidence weighs heavily against Morris's burglary and menacing-by-stalking convictions. Consequently, we will not conclude that the jury clearly lost its way, which created a manifest miscarriage of justice that Morris's convictions must be reversed and a new trial ordered.

{¶44} Accordingly, Morris's third and fourth assignments of error are overruled.

## Assignment of Error No. V

**The Trial Court Erred By Sentencing Appellant To An Indefinite Sentence Pursuant To Reagan-Tokes.**

{¶45} In his fifth assignment of error, Morris asserts that his sentence is contrary to law because the indefinite-sentencing provisions of the Reagan Tokes

Law are unconstitutional.[8] Particularly, he argues that these provisions are unconstitutional on their face and as applied to him thereby violating his right to due process and the separation-of-powers doctrine.

*Standard of Review*

{¶46} Under R.C. 2953.08(G)(2), an appellate court may reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Analysis*

{¶47} The first part of Morris's argument involves a facial challenge to the Reagan Tokes Law. Although Morris preserved this issue for our review, Morris's facial challenge does not present a matter of first impression in this Court. Since the indefinite sentencing provisions of the Reagan Tokes Law went into effect in March 2019, we have repeatedly been asked to address the constitutionality of these

---

[8] Because we have thoroughly explained these provisions in previous opinions, we need not do so here. *See, e.g.*, *State v. Barnhart*, 3d Dist. Putnam No. 12-20-08, 2021-Ohio-2874, ¶ 9; *State v. Hiles*, 3d Dist. Union No. 14-20-21, 2021-Ohio-1622, ¶ 11-16.

provisions. We have invariably concluded that the indefinite sentencing provisions of the Reagan Tokes Law do not facially violate the separation-of-powers doctrine or infringe on defendants' due process rights. *E.g.*, *State v. Crawford*, 3d Dist. Henry No. 7-20-05, 2021-Ohio-547, ¶ 10-11; *State v. Hacker*, 3d Dist. Logan No. 8-20-01, 2020-Ohio-5048, ¶ 22; *State v. Wolfe*, 3d Dist. Union No. 14-21-16, 2022-Ohio-96, ¶ 21.

{¶48} Ultimately, here, Morris asks us to reconsider our earlier decisions. In recent months, a number of defendants have requested the same of us–requests that we have uniformly rejected. *E.g.*, *State v. Abston*, 3d Dist. Henry No. 7-21-04, 2022-Ohio-884, ¶ 33; *Wolfe* at ¶ 22; *State v. Barnhart*, 3d Dist. Putnam No. 12-20-08, 2021-Ohio-2874, ¶ 12-15; *State v. Mitchell*, 3d Dist. Allen No. 1-21-02, 2021-Ohio-2802, ¶ 17; *State v. Rodriguez*, 3d Dist. Seneca No. 13-20-07, 2021-Ohio-2295, ¶ 15. As Morris has not presented us with any compelling reason to depart from our earlier precedent on facial challenges to Reagan Tokes, we once again decline to do so.

{¶49} The second part of his argument is that the Reagan Tokes Law is unconstitutional "as applied" as it violates the separation-of-power doctrine. In the past, we have held that certain as applied challenges to Reagan Tokes were not ripe for review. *See*, *e.g.*, *State v. Kepling*, 3d Dist. Hancock No. 5-20-23, 2020-Ohio-6888, ¶ 11. However, the Supreme Court of Ohio recently released *State v. Maddox*,

___ Ohio St.3d ___, 2022-Ohio-764, and determined that constitutional challenges to Reagan Tokes Law are ripe for review. Based on the holding in *Maddox*, we will address the constitutional issues raised regarding the application of Reagan Tokes.

**{¶50}** In reviewing the matter, we emphasize that statutes are presumed constitutional, and it is Morris's burden to demonstrate that the statute at issue is unconstitutional. *State v. Thompkins*, 75 Ohio St.3d 558, 1996-Ohio-264. Morris has presented no compelling authority undermining the constitutionality of Reagan Tokes.

**{¶51}** Notwithstanding this point, numerous Ohio Appellate Courts have already rejected challenges similar to Appellants. *State v. Rogers*, 12th Dist. Butler No. CA2021-02-010, 2021-Ohio-3282, ¶ 18 (holding that the statute does not violate due process protections or separation of powers doctrine); *State v. Thompson*, 2d Dist. Clark No. 2020-CA-60, 2021-Ohio-4027, ¶ 25 (holding that the statute does not violate the right to a trial by jury or separation of powers doctrine); *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470, ¶ 46 (en banc) (holding that the statute does not violate the right to trial by jury, due process requirements, or the separation of power doctrines). We agree with the reasoning expressed by our sister appellate districts cited herein and determine that Morris's "as applied" challenge in this case is unavailing.

**{¶52}** Accordingly, Morris's fifth assignments of error is overruled.

**{¶53}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER and SHAW, J.J., concur.**

**/jlr**